# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| STEVEN BLAKENEY, <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION, *et al.* <br><br> Defendants. | Civil Action No. 17-cv-2288 (BAH) <br><br> Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

The plaintiff, Steven Blakeney, is a federal prisoner who brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the Executive Office for United States Attorneys ("EOUSA") and the Federal Bureau of Investigation ("FBI"), seeking information about himself and the criminal case resulting in his conviction, in the United States District Court for the Eastern District of Missouri, *see generally* Compl., ECF No. 1; Suppl. to Compl., ECF No. 1-2 (plaintiff's letter, dated September 20, 2017, to EOUSA attaching his FOIA request and related correspondence). After completing processing of responsive records, defendant EOUSA has filed the pending Motion for Summary Judgment ("EOUSA's MSJ"), ECF No. 15. By contrast, defendant FBI made four productions of responsive records between July and October 2018, but has withheld further releases over the last four months, until the plaintiff fulfills his agreed-to obligation to pay "all unpaid money owed for previously released material and pay [] for future anticipated processing." Pl.'s Mot. for FBI to Produce a Vaughn Index ("Pl.'s Mot. for Vaughn Index") ¶ 15, ECF No. 31; FBI's Consent Mot. for Enlargement of Time ("FBI's Consent Mot.") at 1, ECF No. 33. Instead of fulfilling his payment obligations,

1

the plaintiff has filed the pending Motion for FBI to Produce a Vaughn Index, ECF No. 31.[1] For the reasons discussed below, EOUSA's Motion for Summary Judgment is granted, the plaintiff's Motion for FBI to Produce a Vaughn Index is denied, and this case is dismissed.

## I. BACKGROUND

The plaintiff submitted his FOIA request, dated April 11, 2017, to the "Department of Justice's FOIA/PA Mail Referral Unit" ("MRU"), seeking records, for the years 2010 through 2017, pertaining to himself and the federal criminal case resulting in his conviction in the Eastern District of Missouri. EOUSA's Statement of Material Facts ("EOUSA's SMF") ¶ 5, ECF No. 15. MRU notified the plaintiff of receipt of his request by letter and routed the plaintiff's request to EOUSA. *Id.* ¶ 6.

Upon receipt, EOUSA asked the U.S. Attorney's Office for the Eastern District of Missouri ("USAO-MOE") to search for responsive records because USAO-MOE "was primarily responsible for handling the prosecution of" the criminal case underlying the plaintiff's FOIA request. *Id.* ¶¶ 7–8. After conducting a search, USAO-MOE submitted to EOUSA all "responsive, non-public records." *Id.* ¶ 8.

EOUSA reviewed those records and sent the plaintiff "a final determination response," releasing 242 pages "in full," 144 pages "with minor redactions," and withholding 59 pages "in full," pursuant to FOIA Exemptions 5, 6, and 7(C). *Id.* ¶ 9. The plaintiff communicated no objections to EOUSA after receiving EOUSA's final determination. *Id.* ¶ 13. As a result, EOUSA filed the pending motion for summary judgment, arguing that the case became moot

---

[1] The plaintiff initially brought this action *pro se*, *see Pro Se* Order, ECF No. 3, but after EOUSA filed the pending motion for summary judgment, the plaintiff retained counsel and is now represented, *see* Notice of Appearance of Counsel, ECF No. 19 (noticing counsel's appearance on behalf of the plaintiff); Pl.'s Resp. to EOUSA's MSJ ("Pl.'s Opp'n") at 1, ECF No. 26 (plaintiff's opposition to EOUSA's motion for summary judgment "by and through his attorney").

because the agency had produced all responsive, non-exempt records and received no objection from the plaintiff, leaving no live dispute between the parties. EOUSA's Mem. Supp. MSJ ("EOUSA's Mem.") at 20, ECF No. 15. Despite his silence as to the sufficiency of EOUSA's handling of his FOIA request, the plaintiff opposed EOUSA's motion with a short, four-page opposition largely devoted to reciting the procedural history. *See* Pl.'s Opp'n at 1–2. EOUSA's motion for summary judgment is now ripe for resolution.

With respect to the FBI, the other defendant in this action, EOUSA informed the plaintiff in the final determination that "additional records located in the USAO-MOE's files originated with the [FBI]," and those records "were referred" to the FBI "for review and direct response" to the plaintiff. EOUSA's SMF ¶ 9.[2] The FBI subsequently identified "potentially responsive" material, including 3,104 pages, 130 photographs, 15 videos, and 8 audio recordings, and agreed to process and produce the responsive materials to the plaintiff at a rate of 500 pages per month. FBI's Notice to the Court at 1, ECF No. 13. After producing materials to the plaintiff, with certain redactions, over the course of four months, the FBI stopped releasing material because the plaintiff failed to pay the FBI's processing fees for "previously released material" and refused to prepay for future releases. FBI's Consent Mot. at 1; FBI's Status Report at 1, ECF No. 35; Pl.'s Mot. for Vaughn Index ¶¶ 15, 16. The FBI conferred with the plaintiff's counsel and the parties reached the following agreement: "The parties have agreed that: 1) Plaintiff must pay Defendant FBI all unpaid money owed for previously released material and pay Defendant FBI for future anticipated processing 2) Once the payment is received, Defendant will resume processing material at 500 pages a month as previously agreed upon." FBI's Consent Mot. at 1.

---

[2] EOUSA also referred certain records to DOJ's Civil Rights Division ("CRT") for review and direct response to the plaintiff, but the CRT records are not at issue here. *See* EOUSA's SMF ¶ 9; Compl; EOUSA's Reply Supp. MSJ ("EOUSA's Reply") at 2, ECF No. 29.

3

The FBI further agreed to continue releasing records "within 15 days of receiving payment by Plaintiff," *id*., and "in two installments" thereafter, "each 30 days after the prior release," *id*. at 2.

Notwithstanding the parties' agreement, the plaintiff has made no payments and instead seeks an order compelling the FBI to produce a *Vaughn* Index for the materials that the FBI disclosed. *See* Pl.'s Mot. for Vaughn Index ¶ 19; FBI's Status Report at 1. Due to the plaintiff's failure to fulfill his obligations to pay the FBI for months, the Court addresses the plaintiff's pending motion and dismissal of the plaintiff's FBI claim *sua sponte*.

## II. LEGAL STANDARD

"The doctrine of administrative exhaustion applies to" FOIA cases "and limits the availability of judicial review." *Elec. Privacy Info. Ctr. v. IRS*, 910 F.3d 1232, 1238 (D.C. Cir. 2018). "Although exhaustion of a FOIA request is not jurisdictional," this "jurisprudential doctrine" precludes "judicial review if the purposes of exhaustion and the particular administrative scheme support such a bar." *Id.* (internal quotation marks and citations omitted).

When a FOIA plaintiff satisfies the exhaustion requirement, a federal agency must show that it "disclose[d] information . . . upon reasonable request," unless "the records at issue fall within" FOIA's "specifically delineated exemptions." *People for the Ethical Treatment of Animals v. U.S. Dep't of Health & Human Servs.*, 901 F.3d 343, 349 (D.C. Cir. 2018) (internal quotation marks and citations omitted). A "strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *Id.* An agency may satisfy this burden through "affidavits or declarations that describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Id.* Summary judgment may be

granted to a federal agency when the agency sustains its burden by showing that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011) ("[T]he vast majority of FOIA cases can be resolved on summary judgment . . . .").

## III. DISCUSSION

The pending motions by EOUSA for summary judgment and by the plaintiff for the FBI to produce a *Vaughn* Index are addressed *seriatim* below.

### A. EOUSA's Motion for Summary Judgment

EOUSA sets out three grounds for the agency's entitlement to summary judgment: (1) the agency adequately searched in response to the plaintiff's FOIA request; (2) the agency properly withheld information, pursuant to FOIA Exemptions 5, 6, and 7(C), as demonstrated by EOUSA's supporting declaration and *Vaughn* index, *see* Decl. of Natasha Hudgins ("Hudgins Decl."), ECF No. 15-1; EOUSA's *Vaughn* Index, ECF No. 15-2; and (3) the agency disclosed to the plaintiff all reasonably segregable, non-exempt responsive information, *see generally* EOUSA's Mem.

In response, the plaintiff offers no challenge to EOUSA's search and provides only five brief paragraphs critical of EOUSA's withholdings, but without any factual or legal analysis. *See* Pl.'s Opp'n ¶¶ 9–13. Nevertheless, the plaintiff requests *in camera* review of certain EOUSA withholdings. *Id.* ¶¶ 12–13. In light of the plaintiff's cursory opposition, the only issue presented is whether EOUSA has made a sufficient showing to obtain summary judgment. FED. R. CIV. P. 56(a) (summary judgment is warranted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"); *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) (explaining that

5

"a motion for summary judgment cannot be conceded for want of opposition," and the nonmoving party's "failure to oppose summary judgment does not shift" the moving party's burden (internal quotation marks and citation omitted)). As discussed below, EOUSA is entitled to summary judgment.

### 1. *EOUSA's Search for Responsive Records Was Adequate*

According to EOUSA, the agency conducted a good faith search, "reasonably calculated to uncover all relevant documents." EOUSA's Mem. at 5 (internal quotation marks omitted) (quoting *Weisberg v. U.S. Dep't of Justice,* 705 F.2d 1344, 1351 (D.C. Cir. 1983)). An agency may show the adequacy of its search by "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Reporters Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). Based on the detailed description of EOUSA's search, *see* EOUSA's SMF ¶ 8, the Court finds that the agency's search was adequate, particularly in face of no objection raised by the plaintiff, *see generally* Pl.'s Opp'n.

EOUSA searched for responsive records at USAO-MOE, the office "likely [to] have responsive records" because that office was "primarily responsible" for prosecuting the criminal case resulting in the plaintiff's conviction. EOUSA's SMF ¶ 8. EOUSA searched "for electronic and hard copies of responsive material" held by USAO-MOE personnel, including "all criminal AUSAs, civil AUSAs, and all support staff," as well as the "criminal docket clerk, civil docket clerk, the systems manager, and the assistant systems manager." *Id.* EOUSA's thorough search targeted responsive records, applying "search terms and personal identifiers," such as the plaintiff's name, "Steven Blakeney," the criminal case number identified in the plaintiff's FOIA

6

request, and the plaintiff's "date of birth and social security number." *Id.* Accordingly, EOUSA has adequately explained "in reasonable detail the scope and method of the search conducted," which "suffice[s] to demonstrate compliance with the obligations imposed by the FOIA." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).

### 2. *EOUSA Properly Withheld Information Under FOIA's Exemptions*

EOUSA has minimally redacted 144 pages and withheld 59 pages in full, pursuant to FOIA Exemptions 5, 6, and 7(C). *See* EOUSA's Mem. at 9–18 (citing 5 U.S.C. §§ 552(b)(5), (b)(6), (b)(7)(C)); EOUSA's SMF ¶ 9. To justify these withholdings, EOUSA submitted a declaration, *see* Hudgins Decl., and a *Vaughn* index, *see* EOUSA's *Vaughn* Index.

The plaintiff's sole response to EOUSA's withholdings is a bald statement that he "contest[s]" EOUSA's "assertions" with respect to Exemptions 5, 6, and 7(C). *See* Pl.'s Opp'n ¶¶ 11–12 ("[P]laintiff does contest the [E]OUSA assertion as to all of those matters . . . covered by medical, personal, and privacy exemptions," as well as by "work product" and the "deliberative process privilege.").[3] This "mere, unsubstantiated" claim is not sufficient to defeat summary judgment, *Durant v. D.C. Gov't*, 875 F.3d 685, 697 (D.C. Cir. 2017) (internal quotation marks and citation omitted), leaving only the question of whether EOUSA provided sufficient reasons for withholding of information pursuant to FOIA Exemptions 5, 6, and 7(C).

In FOIA cases, an agency must "demonstrate that the records have not been 'improperly withheld.'" *Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 874 F.3d 287, 288 (D.C. Cir. 2017) (quoting *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)). An agency may carry its burden of showing an exemption was properly invoked by submitting sufficiently detailed affidavits or declarations, a *Vaughn* index of the withheld documents, or

---

[3] Confusingly, and without any explanation, the plaintiff also claims that he "does not contest" EOUSA's "assertions as to privacy concerns." Pl.'s Opp'n ¶ 10.

7

both, to demonstrate that the government has analyzed carefully any material withheld and provided sufficient information as to the applicability of an exemption to enable the adversary system to operate. *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1088 (D.C. Cir. 2014).

EOUSA has met its burden and properly withheld information pursuant to the FOIA's Exemptions 5, 6, and 7(c), each of which is addressed below.

        *a)*       *Exemption 5*

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Two conditions must be met for a record to qualify for this exemption: (1) the record's "source must be a Government agency," and (2) the record "must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001); *see also Nat'l Inst. of Military Justice v. U.S. Dep't of Def.*, 512 F.3d 677, 680 (D.C. Cir. 2008).

Exemption 5 may be used to withhold records subject to, *inter alia*, "the attorney work-product privilege" and "the deliberative-process privilege." *Nat'l Ass'n of Criminal Def. Lawyers v. U.S. Dep't of Justice Exec. Office for U.S. Attorneys*, 844 F.3d 246, 249 (D.C. Cir. 2016) (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980)). The attorney work-product privilege applies to "documents prepared in contemplation of litigation," providing "a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Coastal States Gas Corp.*, 617 F.2d at 864. The deliberative process privilege "protects 'documents

reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)).

Here, EOUSA appropriately relied on Exemption 5 to withhold "attorney work-product" and records protected by the "deliberative process privilege." EOUSA's Mem. at 10. EOUSA's declarant averred that the information withheld under Exemption 5 includes "draft pleadings and email communications" among "the AUSAs who were assigned to" the plaintiff's criminal case, and "attorneys from [CRT] who assisted in the investigation." Hudgins Decl. ¶ 22. Withholding of this material under Exemption 5 "protect[s] from disclosure the email communications among the AUSAs analyzing the facts and evidence . . . to determine what charges to bring against Plaintiff, which witnesses should be utilized by the government at each stage of the prosecution," and "the handling of" the plaintiff's "appeal of his criminal conviction." *Id.* ¶ 25. EOUSA's *Vaughn* index also includes descriptions of, and indicates the applicable privilege for, each Exemption 5 record. EOUSA's declaration and *Vaughn* Index, therefore, provide sufficient justification for withholding under Exemption 5.

Without providing any basis for contesting EOUSA's Exemption 5 withholdings, the plaintiff requests *in camera* review of these records. *See* Pl.'s Opp'n ¶¶ 12–13. Documents may be reviewed *in camera* when an "agency cannot describe the document fully enough to show that it is exempt from disclosure without in the course of doing so disclosing the very information that warrants exemption." *Simon v. Dep't of Justice*, 980 F.2d 782, 784 (D.C. Cir. 1992). In the instant case, EOUSA submitted a declaration and a *Vaughn* index, demonstrating that the agency properly applied Exemption 5 to withhold material, and, thus, an *in camera* review of the

disputed records is not necessary. *See Lam Lek Chong v. U.S. Drug Enf't Admin.*, 929 F.2d 729, 735 (D.C. Cir. 1991) (affirming denial of *in camera* review where district court "ruled the DEA index and . . . affidavits sufficient").

### b) *Exemption 6*

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). EOUSA asserts Exemption 6 in conjunction with the agency's assertions of Exemption 7(C) because both exemptions concern balancing "personal privacy" against the public's interest in disclosure. EOUSA's Mem. at 16; *see also* EOUSA's Reply at 1–2. In this case, all responsive records withheld under Exemption 6 "were compiled for law enforcement purposes," and are "properly . . . withheld under Exemption 7(C)," as discussed *infra* in Section III.A.2.c. *Smith v. Sessions*, 247 F. Supp. 3d 19, 26 (D.D.C. 2017) (citing *Simon*, 980 F.2d at 785, and *Williams & Connolly LLP v. Office of the Comptroller of the Currency*, 39 F. Supp. 3d 82, 89 (D.D.C. 2014)). Thus, "the Court need not consider whether Exemption 6 applies to the same information." *Id.*

### c) *Exemption 7(C)*

Exemption 7(C) authorizes an agency to withhold law enforcement records if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In determining whether this exemption applies to particular information, an individual's interest in privacy must be balanced against the public interest in disclosure. *See ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011). The privacy interest at stake belongs to the individual, not the government agency, *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763–65 (1989), and an individual has "a strong

interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. FBI*, 737 F.2d 84, 91–92 (D.C. Cir. 1984). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773). The FOIA requester is obliged to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172, 175 (2004) (explaining that the requester must make a "meaningful evidentiary showing" of a public interest "to balance against the cognizable privacy interests in the requested records").

In the instant case, EOUSA asserts Exemption 7(C) "to protect the names and identifying information relating to third parties" and to "telephone numbers, government attorneys and government personnel involved in the investigation" of the plaintiff, as well as "additional personal and confidential information." Hudgins Decl. ¶ 19. EOUSA's declarant explained that disclosure of this information may "subject individuals to an unwarranted invasion of their personal privacy by leading efforts to contact them directly, gain access to their personal or financial information, or subject them to harassment or harm," might "lead to retaliation against those individuals identified as being connected in some way to [the] investigation," and could "unfairly cause damage to those individuals' careers and reputations." *Id.* In addition, EOUSA's *Vaughn* Index indicates the privacy interests implicated by each of the records withheld under Exemption 7(C). *See generally* EOUSA's *Vaughn* Index.

The plaintiff has identified no public interest in the records withheld under Exemption 7(C). *See generally* Pl.'s Opp'n. Indeed, EOUSA's declarant averred that disclosure of the information withheld under Exemption 7(C) "would provide little or no information regarding

11

the government's performance of its duties," and thus, "no public interest would counterbalance the individuals' privacy right in the information withheld under this exemption." Hudgins Decl. ¶ 19. "Absent a showing by the plaintiff of a public interest to outweigh" the privacy interests at stake, EOUSA's decision to withhold information under Exemption 7(C) is appropriate. *Ford v. Dep't of Justice*, 208 F. Supp. 3d 237, 251 (D.D.C. 2016); *see also Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989) ("We have been shown no public interest [and] need not linger over the balance; something, even a modest privacy interest, outweighs nothing every time.").

### 3. *EOUSA Satisfied the Segregability Requirement*

Finally, EOUSA argues that FOIA's segregability requirement has been satisfied. *See* EOUSA's Mem. at 18–19. "The FOIA requires that '[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt.'" *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007) (alteration in original) (quoting 5 U.S.C. § 552(b)). An agency may satisfy this segregability obligation by describing the materials withheld, the exemption under which they were withheld, and a declaration attesting that the agency "released all segregable material." *Loving v. Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008). Notably, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Here, EOUSA fully described the withheld materials and the applicable exemptions in both the *Vaughn* Index and a declaration. Specifically, EOUSA's declarant averred that "[d]uring the processing of [the plaintiff's] request, each page was individually examined line by-line . . . to identify non-exempt information which could be reasonably segregated and

released," and that EOUSA has provided the plaintiff with "all non-exempt [records] responsive to his FOIA request." Hudgins Decl. ¶¶ 27–28. The plaintiff does not address segregability, offering no reason to rebut the "presumption that [the agency] complied with the obligation to disclose reasonably segregable material." *Sussman*, 494 F.3d at 1117. Based on EOUSA's *Vaughn* Index and declaration, EOUSA has demonstrated that all reasonably segregable material has been produced. *See Poitras v. Dep't of Homeland Sec.*, 303 F. Supp. 3d 136, 163 (D.D.C. 2018) (finding sufficient to meet the segregability requirement an agency's *Vaughn* indices and declarations that the withheld "responsive documents were reviewed on a line-by-line basis and that no further segregation would be possible").

### B. The Plaintiff's Motion for FBI to Produce a Vaughn Index

The plaintiff has failed to pay the FBI's FOIA processing fees for months, preventing the agency from completing the processing of his FOIA request and leaving this case in limbo on this Court's docket. *See* FBI's Consent Mot. at 1; FBI's Status Report at 1; *see also* Pl.'s Letter (June 14, 2018), ECF No. 18 (demanding the processing of responsive records without payment of fees). This failure to pay comes on the heels of the parties' agreement that the plaintiff would fulfill his payment obligations before any further releases by the FBI were made. *See generally* FBI's Consent Mot. In addition, the plaintiff has shirked his responsibilities to this Court. The Court ordered the parties to file a joint status report on the plaintiff's payments to the FBI by February 1, 2019, *see* Min. Order (Dec. 21, 2018); Min. Order (Jan. 22, 2019), but the plaintiff failed to file any update. Instead, the FBI alone notified the Court that the plaintiff still had not paid the FBI's processing fees, and as a result, the agency "suspended all production releases." FBI's Status Report at 1.

Despite the plaintiff's failure to pursue his FOIA request before the FBI and to comply with his obligations, he asks that the FBI be ordered to produce a *Vaughn* Index, presumably for

13

the materials already released without payment. Pl.'s Mot. for Vaughn Index ¶ 19. In view of the plaintiff's apparent disinterest in following through with his FOIA claim against the FBI, the Court addresses, *sua sponte*, dismissal of the plaintiff's claim for failure to exhaust his administrative remedies.

"Exhaustion of administrative remedies is generally required before" a FOIA requester may "seek[] judicial review." *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004). Exhaustion is not a jurisdictional requirement, *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003), but instead is a prudential consideration, *Wilbur*, 355 F.3d at 677. In FOIA cases, exhaustion "does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees." *Oglesby*, 920 F.2d at 66. For example, an agency "may require advance payment of any fee [if] the requester has previously failed to pay fees in a timely fashion[.]" 5 U.S.C. § 552(a)(4)(A)(v); *see also* 28 C.F.R. § 16.10(i)(3) (DOJ regulation explaining that for its components, such as the FBI, "[w]here a requester has previously failed to pay a properly charged FOIA fee . . . a component may require that the requester pay the full amount due" and "may require that the requester make an advance payment of the full amount of any anticipated fee before the component . . . continues to process a pending request or any pending appeal"). If the requester does not pay or appeal a fee waiver denial, "his claim is subject to dismissal" for failure to exhaust. *Otero v. Dep't of Justice*, 292 F. Supp. 3d 245, 253 (D.D.C. 2018); *see also Marcusse v. U.S. Dep't of Justice Office of Info. Policy*, 959 F. Supp. 2d 130, 141–42 (D.D.C. 2013).

Here, "the FBI is entitled to refuse to perform any additional work on the plaintiff's FOIA request because he ha[s] not paid" amounts due on previous releases, and he continues to ignore the FBI's requirement that he must prepay for any additional releases. *Otero*, 292 F.

14

Supp. 3d at 253.  The plaintiff has not exhausted his administrative remedies, and he "is not entitled to avoid his fee obligations by filing a lawsuit."  *Id.*

The remaining question is whether *sua sponte* dismissal on non-exhaustion grounds is warranted.  Non-exhaustion may be considered "*sua sponte*" if "the policies underlying the exhaustion requirement would be served by applying the principle," such as when permitting a claim to proceed "would be both contrary to orderly procedure and good administration," and unfair "to decide" because "the [agency] never had a fair opportunity to resolve [the claim] prior to being ushered into litigation."  *Dettmann v. U.S. Dep't of Justice*, 802 F.2d 1472, 1476 n.8 (D.C. Cir. 1986) (internal quotation marks and citation omitted).

Permitting the plaintiff's claim against the FBI to go forward is both "contrary to orderly procedure and good administration," and "unfair" to the FBI.  *See id.*  The plaintiff's nonpayment, for months, has frozen the FBI's ability make progress on his FOIA claim, and the case will continue to sit idly on the Court's docket until whatever time the plaintiff decides to pay the FBI, should he choose to pay.  Moreover, by withholding payment from the FBI and simultaneously litigating here, the plaintiff asks for judicial intervention prematurely since the FBI's response to the plaintiff's FOIA request cannot be fully assessed until the agency has "a fair opportunity to resolve" the plaintiff's FOIA issues "prior to being ushered into litigation." *Id.*  Accordingly, the plaintiff's claim against the FBI is dismissed, without prejudice, *sua sponte*.  Indeed, "if exhaustion of remedies is to have meaning, it surely must bar review of" the plaintiff's claim against the FBI here.  *Id.* at 1477.  This dismissal of the plaintiff's claim against the FBI renders moot the plaintiff's Motion for FBI to Produce a Vaughn Index.

## IV. CONCLUSION

For the foregoing reasons, EOUSA's Motion for Summary Judgment, ECF No. 15, is granted; the plaintiff's Motion for FBI to Produce a Vaughn Index, ECF No. 31, is denied; and the plaintiff's claim against the FBI is dismissed, without prejudice. The Clerk of the Court is directed to close this case. An appropriate Order accompanies this Memorandum Opinion.

Date: February 5, 2019

_____
BERYL A. HOWELL
Chief Judge